Case No. 19-1500, United States of America v. Rahim Trice, Arguments Not to Exceed, 15 minutes per side. Mr. Gatterdam, you may proceed for the appellant. Thank you. May it please the Court, my name is Court Gatterdam. I'm here on behalf of Rahim Trice. With the Court's permission, I'd like to reserve three minutes for rebuttal. Very well. This is an appeal from a no-contest plea suppression hearing, and the main issue really here is a reasonable expectation of privacy, and is society prepared to accept Rahim Trice's subjective expectation of privacy as objectively reasonable? Can I stop you there, just real, for a clarification purpose? This is Judge Murphy. As I read your briefs, you were only making a reasonable expectation of privacy argument. You were not making a physical trespass argument similar to the argument accepted in Jones. I think that's correct, Your Honor. However, I think you can't ignore the fact that the Court in Kierger said, citing Katz, that trespassing is a form of intrusion that may violate one's reasonable expectation of privacy. So we're saying that Rahim Trice had an expectation of privacy in this six-unit apartment complex, and that also is what distinguishes this from some of the other cases in this circuit and others, is the fact that it was a trespass. Because the apartment manager testified at the suppression hearing, the only people permitted, and yes, it's not a locked door, I concede that, there's no buzzer system and all that, but the only people allowed in are tenants, their guests, and business invitees. The officer in this case was none of those things. And I think what also really sets this apart from, I know my opponent will talk about Dillard, but what sets this apart is what happened in all the other cases is the officers went in either to a locked or unlocked door, and then they viewed something. They saw something in a common hallway. Well, that's not what happened here. The officer did go in, correct, but then what he did is there was this covert action by planting a camera, and it's not just planting a camera, it's not in a common hallway, it's in a common hallway, but where is it pointed? It's pointed directly at the apartment they believed where Rahim Trice was coming and going from. None of the other I think that not only the covert action, the covert nature of that, but it also then starts bringing in the curtilage cases, your honors, because now we're not looking at a view down a hallway where an officer sees somebody coming or sees a drug transaction, I think that was the case in maybe perhaps Dillard, but no, it's trained right on Rahim and at least two of them, you can see into the apartment complex or into his apartment, and then on one of them, he got a phone, and when you start talking about this, is your argument that the video could see into the curtilage, or is your argument that the smoke detector was actually itself in the curtilage? It was difficult for me to tell how far it was away from his front door. Yeah, I certainly, the first, the former is true, and on at least several of the clips you can see inside the apartment, and then the curtilage, depending on, I think Morgan says five to seven feet from the home is curtilage. Your honor, I was not trial counsel, so Mr. Fouston may be able to dispute this, but it seems like the camera was posted within the curtilage. It's right there. The apartment that they're focusing on is at the bottom of the stairs, and the smoke detector camera is right there. I mean, Mr. Trice is seen right at the door multiple times, and he's literally almost on top of you, so it's not a great distance away. So Mr. Goddard, this is Judge Bush. So is your position that the entire hallway is curtilage? No, it's not. I think that area around the front doorstep, I don't think curtilage only means single family homes. I think curtilage means apartments, and when you train a covert camera on the front doorstep, that encompasses curtilage, and I'd have a tougher argument, your honor, if the officer went into the apartment complex through an unlocked door, walked downstairs, although walking downstairs, again, this is the basement. This is a basement apartment, so I'd say it's a king. If he just saw something happening, if Mr. Trice was doing a drug transaction, then I'd have a problem, but that's not what we have here. How do you handle or deal with a case like United States v. Houston, where there's pole camera footage or a video camera that is capturing what's happening in curtilage? Yes, your honor. I think the difference in Houston is, here in our case, we have an interior hallway. In Houston, everything is outside. It's on a pole camera on a public street. It covers all the public domain. The fact that it may cover partial curtilage from a public area is different than here, where the officer goes inside an apartment, which I think nobody would dispute. There is an expectation of privacy in some places within the apartment, and then places the camera directly facing the door of one apartment. That's not what happened in Houston. Houston's a public road, so that's how I would distinguish that. Again, what does somebody reasonably expect? If you see somebody in a hallway, you can make adjustments to whatever it is you're doing, but when there's a covert camera placed, you don't know. You can see in at least one of the clips, Mr. Trice is on his cell phone doing something. On another clip, he's actually speaking to somebody. Again, some of the cases distinguish your expectation of privacy by saying, hey, look, you're walking down a hallway with your friend and doing a drug transaction in full view of other people. You've sort of given up your expectation of privacy, but that's not what happened here. Mr. Trice, this is a six-unit apartment. Again, it's like the King case, where we have two single family homes. It's a basement apartment, so you don't think somebody's down in your basement apartment, except the other tenant. There was only two tenants in the basement in this apartment complex, and I think that distinguishes it. The only other thing is if the landlord had allowed the law enforcement in. I think that would be a distinguishing factor, but we don't have that here. I'd like to go back to the Dillard case again and make sure I understand. How do you characterize the holding in Dillard? Because my understanding of Dillard was that if you had an open, an ajar entranceway to a hallway in an apartment building, at the hallway, there was no reasonable expectation of privacy in the hallway. Am I reading that case the wrong way? I mean, it seems to be what's applying here, that would be the strongest reason why your client would not prevail. I agree. That's what is said in Dillard, but I think there's a few distinguishing factors in Dillard, too. Ultimately, they knocked on the door of the apartment and they got consent to enter. Yes, they were both open, but first of all, again, that was, I believe, a multi-unit apartment complex versus six units. And the law enforcement, I believe, if I'm not mistaken, saw where the person was going. In other words, they, with their own eyes, could see what was going on. They didn't plant a camera and then go to a magistrate and fail to tell the magistrate, hey, you know what, we did covert surveillance. They just didn't do that. They planted a camera. None of these other cases, Dillard, Carriger, King, none of them is surreptitious surveillance being done. It's, hey, open door, I'm in the building, this is what I saw. I think that's what Dillard says, and that's not what happened in Trice. So that's how I would distinguish Dillard. And I know I'm getting close to my time, but I will just point out, in case Mr. Faustin addresses it, I don't think the good faith exception saves this in this particular case, because the officer, when going to the magistrate in the affidavit, did not disclose that, hey, you know, this is why, they disclosed that we did surveillance and saw Trice coming in and out of apartment B5, but they failed to tell the judge that they did it through covert surveillance. And I don't think that's the type of case when the good faith exception is in mind to deter unlawful police conduct, I think you should tell the judge, hey, this is how we found out this is the correct apartment. I think you should be honest to the judge when getting your warrant. And prior to the covert surveillance, they didn't know where Rahim Trice, which apartment he was in. They saw him coming and going from the apartment complex, but they didn't know. So to Mr. Faustin's point, if you excise the improper stuff from the warrant, you don't have probable cause, you don't get a warrant. Didn't they know he had been in the Pontiac that was registered to this particular apartment? They knew that it was a Pontiac registered to a Credanda McFerrin, aka Trice, but they didn't tie him to her. That's the important distinction, is they never tied him to that, he could have had an apartment in that building, a different one, and they never knew whether Credanda McFerrin was his girlfriend, his wife, his sister, his mother, whatever. So yes and no, Your Honor. Again, if you excise the improper covert surveillance and going into the apartment improperly, they don't have probable cause, and that's why all the other questions, I just ask you to defer my remaining time for rebuttal. Thank you, counsel. Mr. Faustin. Thank you, Your Honors. Joel Faustin on behalf of the United States. Investigator Bain and surveillance activity here squarely fell within the bounds that this court has set forth in both Dillard and Houston. My opponent cannot square the courts holding in Dillard with effectively what has happened here. Dillard stands to the proposition that if there's a common hallway in an apartment building, and there is no barriers to access that common hallway, as there was not here, then it's a public space. And it can't be resolved with the notion that this is somehow curtilage. My opponent even just conceded in his argument, one of the judges here asked, is the entire hallway curtilage? And he said no. Well, at what point do you draw the line for curtilage here? This isn't some subjective drawing. It's what society determines to be objectively reasonable based on the characteristics of what it is that was intruded upon. And here again, under Dillard, it was a common hallway to an apartment building with six units that had no lock on the front door, no intercom system, no security guard. And the property manager testified effectively that anybody came in. My opponent- Well, Mr. Paulson, didn't the property manager testify that trespassers were not permitted in the hallway? Your Honor, it was within the context of loitering. My defense- the defense counsel below asked that within the context of loitering. And of course, there are many places where loiterers were not allowed. But the notion that you can't go and loiter in squad doesn't necessarily preclude the police or other members of the public from entering a building and confine something as a private space when the characteristics otherwise indicate that it's not. But doesn't that suggest that- Was the property manager asked specifically about whether he had given permission one way or the other to put- or would allow a smoke detector or fake smoke detector to be put on the wall? Was there any questioning of the property manager about that particular conduct? No, there was no questioning based on my recollection in recent reading of the conduct, Your Honor. It was simply within the context of trespassers and loiterers. And in response to that, the property manager said, well, if we got a call from one of our residents that there was a loiterer in the hallway, we would call the authorities. This idea that there's trespassing here and that the police would need some invitation to enter this area, I think, Supreme Court case where the police were found to effectively go on to private property, not deemed within curtilage. It was a ranch area, but it was to look inside a barn where there was illegal drug manufacturing going on. There was no discussion of trespass there because it was the open field doctrine. And I don't think you can square the notion that this public hallway is- what would amount to a sidewalk in suburbia. And for that reason, I don't think this case gets past Diller. Effectively, my- Can I ask a hypothetical? This is Judge Murphy. What if you just had no indication of which apartment he might be living? And so you at all six. So with that, I assume that under the logic of your argument here, that nobody has a reasonable expectation of privacy and hidden cameras facing their apartment doors, that would be fine? I think if it's a space that is visible to the public and passerby, it is fair game. Now, I understand the court is concerned about long-term warrantless surveillance, and that's justifiable. But one of the things society is now facing, which wasn't- isn't here in this case, but is going to be something I'm sure courts will have to grapple with is the explosion of ring cameras on people's front doorsteps. I think as ring cameras become more and more widely used and available, where they have a camera peering out from a front doorstep into a neighborhood, a lot of surveillance is being obtained through that. And it's not necessarily via law enforcement, but it's being given to law enforcement. There's no- Under Dillard, if the court deems that this is a public area that Bainon would have had access to as a police officer or any other member of the public, then this is effectively a poll camera. And the courts holding in Houston talks about the mere possibility that Bainon may have stood there for five to six hours, not the practicability of him doing so. And I think when technology is used reasonably, as it was in this circumstance, in a public area to see something that your average passerby could see, there is no incursion on Fourth Amendment grounds here. What would- So this is- I'd like to ask you the same question that I asked opposing counsel. I do agree that under Houston, if a video or a hidden camera is peering into curtilage, that seems fine. But if the hidden camera is posted on curtilage, that's an open question in my mind. And so is there any facts about the location of where this camera was actually posted in association with the apartment? It was difficult to tell from just watching the video. Sure. And I believe this is based on the transcript of the suppression hearing. It was posted in the hallway across, slightly down the hall from the door, but so that they could catch a view of the door. And the whole purpose of it was simply to record who entered and exited the apartment B5, which Mr. Trice was found to be residing in. I'd note in the camera could actually peer inside the apartment. And contrary to my opponent's assertions, the district court found that there was absolutely nothing that it could really see or discern inside the apartment. So back to the question about whether this was posted on curtilage, I maintained that it was not. In preparation for this argument and the appeal brief, I searched the case law to determine whether there has been a court that has determined that a hallway freely accessible to the public with no barriers to entry in an apartment building counts as curtilage. And I simply have found none. And effectively, my opponent is asking this court to expand the definition of curtilage to something which it has never been expanded to before at any time up to this point. As to the Leon issues, because I first want to address the notion or my opponent's assertion that investigator Bainon may have willfully omitted the issue that he was doing covert surveillance here. I submit, your honors, that that is not an issue for this panel because it was not raised in the district court below. That type of allegation comes under Franks v. Delaware and counsel below never raised that issue. And I further note that just as a practical matter, frequently law enforcement does not and is not required to disclose all of their tactics in affidavits which then become publicly available because it would undermine their ability to investigate. Otherwise, I do believe that this falls within the good faith exception and the exclusionary rule is not appropriate here at all. The United States Supreme Court has said effectively that if investigative tactics are available to law enforcement officers based on binding appellate precedent and the use of a poll camera is under Houston and the entry into a common apartment building is under Dillard, then law enforcement officers should go and use those techniques to do their job and that's what the Fourth Amendment is reasonableness. And here, this was a camera that was motion activated, so it wasn't even continuously streaming. It only triggered when there was motion around the camera and it was only up for five to six hours. That type of surveillance is far less than what this court has previously approved in Houston. What it recently approved in terms of a 23-day surveillance on a poll camera of a carport area in Mayshaw and it fits within this court's binding appellate precedent and there should be no basis for exclusion here even if the court were to find that Investigator Bainon somehow unlawfully encroached upon Mr. Trice's curtilage which for all of the reasons that I previously stated, he did not do. Can I ask you a question about, if you know the concurrence, Justice Alito's concurrence and Jones and he said there that reasonable expectation of privacy might differentiate between a short-term monitoring of GPS monitoring of a suspect and a longer-term, weekly-term monitoring of the suspect. I wonder if you would concede that that type of analysis might apply here or would you say that it's just inappropriate and monitoring for months would be fine? And if I'm understanding your question correctly, Your Honor, you're asking would monitoring for months in the confines of a hallway of I believe under this court's precedent as currently written, it would. Now, would the court have concerns about that? Would society have concerns about that? I concede it absolutely would and perhaps there will be a case in the future where that type of surveillance occurs and it becomes ripe for this court to consider. The district court below is even concerned about that. Section 4 of the opinion order referenced the future. But again, what Officer Bainan did here was reasonable based on the fact that it was a motion-activated camera. It was not a fishing expedition, which again was also a basis for this court to uphold the search on good faith standards as cited in my brief in United States v. Muhammad. And it was very, very confined and very narrow in terms of the use of the camera. I do believe as ring doorbells become more and more available throughout society and more used throughout society and that type of surveillance is voluntarily given to officers, I have little doubt that at some point in the future, appellate courts will probably have to grapple with some type of scenario like that. But the Paul Cameron Houston was 10 weeks long. The Paul Cameron Mayshaw which this court approved was 23 days long. And here you have effectively what amounted to a Paul Cameron for five to six hours. And under Dillard, I don't think you can at least based on the characteristics of Trice's apartment building, which is effectively just an open hallway with apartment doors coming off each area, you can call, as my opponent would ask this court to do, some of that hallway is curtilage and others not. I think Dillard squarely forecloses that. And I would submit that one panel of the court couldn't overrule another yet on this. That would be an unbanked question for the entire Sixth Circuit if it were to get to that in this court were to feel counsel fought Mr. Boston, just to make sure I understand, is it the government's position that there can never be any curtilage in an apartment building? No, that is not the government's position. The government's position is it has found no case law asserting that the hallways in an apartment building constitute curtilage. I could envision, Your Honor, an apartment building where there may be patios off of each individual apartment that have screened off walls to them. And of course, that would be an area that I think under the Supreme Court's precedent would deem to be curtilage. It's really an issue as to whether the dweller is trying to shield off that area from public passers by how close it is to the home and what the uses are of it. And here, there's simply no indication that Mr. Trice would be using the area immediately outside his front door for anything other than to enter and to exit. And I'd further submit that the mere act of entering and exiting a residence is not something that's typically a private affair and therefore not something that the But doesn't that prove too much? The reason I say that is because in Florida versus Jardines, the Supreme Court said the prototypical curtilage was the front door. And frankly, front doors of most homes in most suburban neighborhoods are open and conspicuous. So why wouldn't we apply the same rule to a front door of an apartment building that applies to the front door of a home? And in response to that, Your Honor, I think the police were going to that front porch to use a drug sniffing dog to find out something that was going on inside the home, which is actually constitutionally protected by the Fourth Amendment. Jardines did not deal with the issue of someone entering or exiting their door, which could be viewed and visible by any passerby at all. And that's effectively the same as to what the search amounted to here, if you would even call it a search. It was simply the issue of whether Mr. Trice was going in or out of that apartment. There was nothing else gleaned from that surveillance as I think this court will find by the district court's opinion. And I would respectfully request that the court deny this based on Dillard and Houston. But even if the court were to find this to be an unconstitutional search, that this was close enough to the line of constitutionality, if you will, that the good faith exception should apply. Thank you. Thank you, Mr. Paulson. Mr. Goddard, do you have a rebuttal? Yes, I do. First of all, thank you, Your Honors. To say that Mr. Paulson said multiple times this is all visible to the public. That's not true. This was the hallway in the basement of an apartment. There was nothing that was going on in that hallway. And that distinguishes it from Houston where the poll camera gets everything out in the actual public. So I think that does distinguish it. And the mounting of the camera, the court can see it's focused right on the door. If that's not curtilage, then I guess nobody has curtilage. And I think that the troubling thing, the troubling precedent out of this case, if this court affirms the district court, the district court said the common unlocked hallway in a low rent apartment building does not carry the same level of protection as the doorstep in suburbia. Now, that's an incredible precedent. I mean, we are apportioning privacy rights based on race and socioeconomic status when we do something like this. We know if this camera was trained on a front door suburbia, I think the district court would have even said this wouldn't have been a proper search. And so that's just wrong then that, again, I distinguish Dillard and the other cases, you don't need to overrule Dillard. I know this court can anyway. I'm not asking that. I'm saying this is different. When you post a, surreptitiously post a camera trained on curtilage of somebody's apartment, that's not, that does violate the fourth amendment. I know it's an apartment. It's a little different than a home, but it doesn't mean you give up all your rights to privacy in that apartment. Was Raheem Trice's expectation in the basement apartment reasonable that nobody be training surreptitiously a camera on him and videotaping him and hearing what he was saying? Yes. And it did capture, maybe it didn't capture drugs or guns or anything like that, but you can see inside his apartment even for a brief minute. Again, in suburbia, this district court says that's wrong. In a low rent apartment building, everything's fair game. I think that's just not the status of the law. And that's why I'm asking you to reverse the district court and suppress all evidence as a result of the unlawful search. Thank you, Mr. Goddard. And also I thank you for accepting the CJA appointment in this case. You're welcome. And both counsel have done an excellent job. I think the oral argument has been very helpful for addressing the issues. So we will take the case under submission now. Thank you to both counsel and the court may adjourn the court. Thank you. It's honorable.